No. 29,250.

WILLIAM WESLEY WILKISON, *Appellant*, v. HARRISON W. WILKISON and WILLIAM W. PEASE, Executor of the Estate of Mary C. Wilkison, Deceased, *Appellees*.

(286 Pac. 252.)

Opinion filed April 5, 1930.

*A. E. Crane, B. F. Messick, A. Harry Crane*, all of Topeka, and *W. J. Pirtle*, of Council Grove, for the appellant.

*James V. Humphrey* and *Arthur S. Humphrey*, both of Junction City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to obtain an interpretation of the will of Isaac Wilkison, who died on October 25, 1916, leaving as his heirs his widow, Mary C. Wilkison, a son, William Wesley Wilkison, the plaintiff, and another son, Harrison W. Wilkison. The will was probated on November 1, 1916, when the widow elected to take under the will. The widow and the plaintiff were appointed to execute the will, a copy of which is as follows:

"I, Isaac Wilkison, of the town of Dwight, in Morris county, state of Kansas, being of lawful age and sound mind and disposing memory, do make, publish and declare this to be my last will and testament.

"1st. It is my will and I direct that out of my estate all my just debts and all the expenses of my last sickness and funeral expenses be paid in full.

"2d. I give and devise to my son, William Wesley Wilkison, the west half of the southeast quarter of section 12, in township 14, range 7; also blocks sixty-four, sixty-five, sixty-six and C in the town of Dwight, all in Morris county, Kansas.

"3d. I give and bequeath all the rest and residue of my property, both real and personal, of which I may die seized and possessed, to my beloved wife, Mary C. Wilkison, to hold, use, possess and enjoy during the period of her natural life, and after her death I will and devise and I hereby devise to my son, William Wesley Wilkison, the southwest quarter of section 12, township 14, range 7, and the north half of the southeast quarter of section 11, township 14, range 7, all in Morris county, Kansas, and to my son, Harrison W. Wilkison, I give and bequeath the northwest quarter of section fourteen, the north half of the northeast quarter of section fourteen and the south half of the southeast quarter of section eleven, all in township fourteen, range seven, in Morris county, Kansas.

"4th. I give and bequeath to my son, Harrison W. Wilkison, the sum of three hundred dollars a year until he arrives at the age of twenty-one years, provided that he attend some good college and diligently pursue his studies in such college until he arrives at his majority. I desire to be understood that said three hundred dollars per year is for the purpose of being honestly expended by my executors for and upon the education of my said son, Harrison W. Wilkison, and should he refuse or fail to attend and study as herein specified, then he is to receive no part of said money for the time he fails to attend and study as herein desired.

"5th. After the death of my wife, I will, devise and direct that all the property left on hand by her should be equally divided between my two sons, except the property apportioned and devised to each of them herein already.

"6th. Should either of my sons or any daughter-in-law be dissatisfied with my disposition of my property as made under and in this will and undertake to contest or set aside this will, then such son or daughter-in-law should heir only five hundred dollars out of my estate and the rest shall be ·equally divided among my other heirs upon the death of my wife.

"7th. I hereby nominate and appoint my wife and son, William Wesley Wilkison, executors of this my last will and testament, and I direct that they shall not be required to give bond.

"8th. I hereby revoke all former wills made by me.

"In testimony whereof I have hereunto set my hand and subscribed my name to this my last will and testament in the presence A. Moser, Jr., and L. H. Brigham, this 8th day of October, A. D. 1906.     ISAAC WILKISON."

The widow took possession of the life estate given to her and the administration of the estate proceeded to December 2, 1918, when a final settlement was made on the theory that she had been granted a life estate, and was entitled to and was the owner of the income from the lands, and the investment of the funds during her lifetime. It appeared that she had as her separate estate, apart from what was given to her under her husband's will, quite a sum of money,

amounting to nearly $12,000. In this action the district court ruled that the will gave the widow a life estate and adjudged that the plaintiff recover one-half of $2,223.97, the right of plaintiff to the amount never having been disputed, and assessed the costs against the plaintiff.

The principal contention in the case arises over the interpretation of the will, and plaintiff states that the only question involved in the case is the proper construction of the will. He contends that item 5 of the will should be construed as devising and bequeathing not only the property owned by the testator but also all the property owned by Mary C. Wilkison at her death. She died December 3, 1928, leaving a will in which W. W. Pease was named as executor. The provisions of her will are not included in the record and are not involved in this action. It is insisted that the provision of the will directing that, "After the death of my wife, I will and devise and direct that all the property left on hand by her should be equally divided between my two sons, except the property apportioned and devised to each of them herein already," carries not only the property given by the will, but also the individual property owned by his wife at her death. It is argued that since she had accepted under the terms of the will, all the property left by her, whether it was her own individual property or that devised to her, was to be equally divided between the two sons. Did the testator undertake to dispose of his wife's individual property? It is not lightly to be assumed that a testator intended to dispose of property which he did not own. It cannot be done unless there is an unequivocal expression in the will which leaves no doubt of the testator's intention before the widow is put to an election. In 1 Pomeroy's Equity Jurisprudence, § 472, it is said:

"In order to create the necessity for an election, there must appear upon the face of the will itself, or of the other instrument of donation, a clear unmistakable intention, on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation." (See, also, §§ 473, 474.)

In 2 Underhill on Wills, § 730, the subject is treated and the following is said:

"The ordinary presumption in all cases is that a man in making his will

intends to dispose of his own property alone. An intention on the part of the testator to dispose of the property owned by another person must either appear on the face of the instrument in express language or must arise from necessary implication. . . . But where the testator owns property in which another person also has a part interest, or a charge thereon, or where he owns a share in property and another person owns the residue, and the testator devises the whole property in vague or general language, the question at once arises, Does he intend to dispose of the whole property, including the interest of the other person, or does he intend to confine his disposition of the property exclusively to the interest which he owns? The reasonable presumption is in favor of the latter proposition, and the courts, in construing a general disposition of property in which the testator has only a partial interest, will favor a construction which will dispose only of the actual interest of the testator."

In 28 R. C. L. 233 it is said:

· "Another presumption recognized by the courts in construing wills is that the testator intended to dispose of property which he owned and that he did not intend to devise any property over which he had no power of testamentary disposition. For example, a devise in form of particular lands in which the testator or his mortgagee only passes the mortgage interest as being that which he must have intended as his gift. The presumption is that the testator knew his own titles and the powers he had in reference to the property held by him."

The will was in no sense a joint or mutual one. None of the wife's property was described in the will and nothing in it to indicate that the testator owned any share in her property. The giving and bequeathing paragraph in specific terms relates to "my property, both real and personal, of which I may die seized." The only claim that he intended to devise more than his own is the far-fetched implication in the clause in item 5 that all the property "left on hand by her" should be equally divided between the sons. The reasonable inference is that he was referring to property described and given by him in item 3 of the will—the remaining part of that which he actually owned. Within the general rules for the construction of wills, there is not that clear and unequivocal language in the instrument showing an intention of the testator to dispose of the individual property of the wife so as to put her to an election.

The contention that the will is less than a complete life estate cannot be sustained. The devise was not limited to mere support and maintenance. The provision in the fifth item did not operate to cut down the estate clearly given in the third item. Under the authorities she was given a life estate with the power of disposal.

In *Greenwalt v. Keller*, 75 Kan. 578, 90 Pac. 233, involving a question similar to the one we have here, the decision as stated in the syllabus is:

"A will contained the following clause: 'First, I wish my wife, Eliza Bunt, to have all my property of every kind that I may own at my death, to have for her own use and benefit while she may live. And at her death all property that may be left by her'—then follows a disposition thereof. *Held*, that the widow took a life estate, with power of disposal in fee."

See, also, *Otis v. Otis*, 104 Kan. 88, 177 Pac. 520, and cases cited; *West v. West*, 106 Kan. 157, 186 Pac. 1004; *Elwell v. Stewart*, 110 Kan. 218, 203 Pac. 922; *Mansfield v. Crane*, 116 Kan. 2, 225 Pac. 1087; 40 Cyc. 1615, 1629.

Following these authorities, the judgment of the district court must be affirmed. It is so ordered.